EDWARD P. AVERY *vs.* JOHN P. STUDLEY, MAYOR.

JAMES P. LANDERS *vs.* JOHN P. STUDLEY, MAYOR.

JOHN H. CLARK *vs.* JOHN P. STUDLEY, MAYOR.

JOHN F. SHANAHAN *vs.* JOHN P. STUDLEY, MAYOR.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

Departing from former methods, the charter of the city of New Haven, as revised in 1899 (13 Sp. Laws, 388), seeks to secure good government through the concentration of responsibility and power in the

mayor. His duties cover the whole range of executive power, including the appointment, directly or indirectly, of substantially all municipal officers and employees.

A general power of removal, after a full hearing upon written charges, is given to the mayor (§ 12), "whenever he may believe any person appointed to office by him or any of his predecessors to be incompetent, or unfaithful to the duties of his office, or that the requirements of the public service demand his removal," and an appeal to the Superior Court is given from the order of removal. *Held* that the power of removal conferred upon the mayor was incident to the efficient discharge of his executive functions, and that the hearing prescribed by § 12 was not a judicial trial to establish a forfeiture of an office, but an administrative proceeding to prevent injustice or partisanship in the exercise of the mayor's discretionary power.

The Superior Court, on an appeal from the mayor's order of removal, cannot review the exercise of his discretion. It can only determine whether any essential formality has been omitted, and, perhaps, whether the mayor has acted so arbitrarily as to prove that he did not act honestly in the public interest, but for personal or political reasons.

On such an appeal the appellant has the affirmative of the issue.

In determining the question of incompetency or unfaithfulness, the mayor may consider acts of the officer which occurred before the mayor's term of office began; and acts as to which discretionary power was vested in the officer.

It is no bar to the mayor's power of removal for incompetency and unfaithfulness, as evidenced by certain official acts, that a former mayor had the same acts brought to his attention and took no action thereon.

Whether, if such former mayor had, after a hearing, decided that the acts in question did not furnish cause for removal, the present mayor could make them the ground of removal, *quære.*

That the mayor, upon the hearing, refused to allow the officer the assistance of counsel, does not necessarily show that the removal was invalid; but a refusal to allow counsel is unusual, and might tend to prove arbitrary or unfair exercise of the mayor's power.

If the Superior Court, after a full hearing of the removed officer, comes to the same conclusion as to his incompetency and unfaithfulness as did the mayor, it sufficiently appears that the refusal of counsel upon the original hearing did not prejudice such officer.

Argued November 6th—decided December 20th, 1901.

APPLICATIONS in the nature of appeals from the action of the mayor of the city of New Haven in removing the applicants from the office of police commissioners, brought to the

Superior Court in New Haven County and tried together to the court, *Ralph Wheeler, J.;* facts found and judgment rendered in each case approving and confirming the action of the mayor, and appeal by the respective applicants for alleged errors in the rulings and findings of the court. *No error.*

After the hearing in the Superior Court counsel agreed that in the appeals to the Supreme Court of Errors the record of but one of the four cases should be printed, namely, that in the case of Edward P. Avery *vs.* John P. Studley, Mayor, and that all of the cases might be considered and decided upon the record in that case.*

On May 14th, 1901, the plaintiff, Edward P. Avery, and the plaintiffs in the other cases, James P. Landers, John H. Clark and John F. Shanahan, as members of the board of police commissioners of New Haven, voted to make certain changes in the police force, by the transfer of two captains and a sergeant to the veteran reserve, and provided for promotions to the vacancies in the active force thus created. Of the four commissioners thus voting, Clark had been appointed as a Republican, the other three as Democrats; and the remaining two commissioners, who had been appointed as Republicans, voted against the action. The plaintiff and the other three commissioners voted for this action in pursuance of a prior understanding between them, by which each one named one or more of the persons who were to be promoted.

At this time Cornelius T. Driscoll was mayor of the city, his term of office expiring at noon, June 1st, 1901, at which time the defendant, John P. Studley (who had been chosen at the election in April), succeeded him. On May 21st, 1901, a meeting of citizens was held at New Haven which passed resolutions protesting against the action of the board of police

---

* At the January term, 1902, of this court, counsel for the appellants appeared and objected to the allowance of four attorney fees of $20 each, in the taxation of the costs as made by the clerk; claiming that although four appeals were taken, but one record was printed and but one case was argued. The court sustained the objection and ruled that but one attorney fee should be taxed in the Supreme Court of Errors.

commissioners, and calling upon Mayor Driscoll, or his successor, Mayor Studley, to remove the four commissioners voting for it, as inefficient public servants. A few days later a committee of the meeting presented these resolutions to Mayor Driscoll, who stated that in his opinion the action of the board was beneficial to the city, and that he saw no reason for the removal of the four commissioners. He took no action in the matter.

On June 1st, 1901, Mayor Studley summoned each of the four commissioners to appear before him on June 4th, 1901, to show cause why he should not be removed from office. The charges accompanying the summons stated with much detail substantially this: that each commissioner, in concert with the others, had voted as above set forth, for improper reasons, and in so acting and voting had not honestly exercised the discretion given him by law; that they had been and then were unfaithful to the duties of their office as police commissioners, and that the requirements of the public service then demanded their removal.

The four commissioners appeared before the mayor in response to this summons, and moved that he make a more specific statement of the charges, and that each be allowed the assistance of counsel during the hearing. These motions were denied. The commissioners thereupon, with their counsel, withdrew from the hearing and took no further part in the same. Mayor Studley proceeded with the investigation, examining witnesses under oath, and after its conclusion found that each of the commissioners was incompetent and unfaithful, and that the requirements of the public service demanded his removal, and thereupon removed each of them from office, and sent to each commissioner a notice of such removal.

The plaintiff, Avery, and each of the other three commissioners, appealed to the Superior Court from the order removing him.

The complaint sets forth the facts in respect to the hearing before Mayor Studley, and alleges in paragraph 5 that the mayor refused to entertain or pass upon a motion to dis-

miss the matter for the want of jurisdiction; in paragraph 9 that the evidence given before the mayor proved and tended to prove that the plaintiff had acted, in the matter charged against him, in good faith and wholly within his right, and in the manner and discretion provided by law; and in paragraph 11, that the plaintiff "is neither incompetent nor unfaithful to the duties of his office, nor do the requirements of public service demand his removal by reason of the acts alleged in said charges;" that the plaintiff has done no act "which warrants his removal by the said John P. Studley, as mayor; nor has a full and reasonable opportunity been given to your applicant to know the nature and character of the charges against him, and to answer and defend against the same;" and that the matters charged against him had been heard and duly examined by Mayor Driscoll, and were by him dismissed.

The answer denies the allegations of paragraphs 5, 9 and 11, and admits the other allegations of the complaint. The parties went to trial and without objection offered evidence in respect to the issues thus framed.

The judgment of the Superior Court finds these issues for the defendant, and affirms the mayor's removal of the plaintiff.

The errors assigned in the appeal to this court are, in substance, as follows: (1) In overruling the plaintiff's claim of law that Mayor Studley had no jurisdiction over the matters contained in the charges against said commissioners, as the matters therein complained of did not take place during his term of office. (2) In overruling the claim of law that Mayor Driscoll had sole jurisdiction of said charges, and that, as his attention had been called to the same, and he had come to the conclusion that the appellants had not acted in any improper manner and had not been guilty of any violation of duty, and that the good of public service did not require their removal, and had refused to remove them, Mayor Studley had no power in the premises. (3) In overruling the claim of law that as Mayor Studley had not permitted the appellants to have the services of counsel in their

defense at the hearing before him, there had been no full hearing such as the charter requires, and that said hearing was void and of no effect. (4) In overruling the claim of law that Mayor Studley had erred in denying the plaintiff's motion for a more specific statement. (5) In overruling the claim of law that the refusal on the part of Mayor Studley to permit them to have counsel at said hearing was an error of law, in consequence of which the court ought to revoke the mayor's order of removal. (6) In overruling the claim of law that the mayor could not remove the plaintiff for any conduct of the plaintiff in the exercise of his official discretion. (7) In finding the facts stated in paragraph 16 of the finding without any evidence.

The appeal also assigns error " in approving the order of Mayor Studley upon the facts stated in the finding," and claims certain corrections in the finding.

Sections 11, 12, and 46 to 51 of the charter, specially referred to in argument, are given in the note.*

* Sec. 11. It shall be the duty of the mayor: 1. To cause the laws and ordinances to be executed and enforced, to inform the city attorney of all violations of law brought to his attention, and to conserve the peace within said city. He shall be responsible for the good order and efficient government of said city. 2. To fill by appointment vacancies in office in all cases in which he is given by law the power to appoint. 3. To communicate to the court of common council, during the month of July next succeeding his election, and quarterly thereafter, a general statement of the condition of the city in relation to its government, finances, public improvements, and affairs, with such recommendations as he may deem proper. 4. To call special meetings of the court of common council when he may deem it expedient. 5. To sign all bonds and deeds and all written contracts of the city made either by the court of common council or any officer of the city in accordance with authority conferred upon them by this charter or the ordinances. 6. To call together, at least once in every month, for consultation and advice upon the affairs of the city, the superintendents of the departments of fire service and police, the director of the department of public works, the president of the department of parks, the president of the board of education, the president of the department of charities and correction, the controller, the corporation counsel, the health officer, and such other executive and administrative officers as he may deem best; and at such meetings he may call on any of said officers for such reports as to matters under their management as he may deem proper. 7. To

*E. P. Arvine* and *William B. Stoddard*, with whom was *Jacob B. Goodhart*, for the appellants (plaintiffs).

either approve or disapprove, in writing, every vote, resolution, order, or ordinance passed by the court of common council. If he approve it or fail to take action within ten days after the passage thereof, such vote, resolution, order, or ordinance, shall become operative and effectual. In case the mayor shall fail to take action upon any vote, resolution, order, or ordinance passed by the court of common council, within ten days after the passage thereof, the clerk shall endorse the fact upon the vote, resolution, order, or ordinance. If he shall disapprove it he shall notify the city clerk of that fact, and he shall transmit in writing his reasons for such disapproval to the body in which it originated at or before its next regular meeting, and such vote, resolution, order, or ordinance, shall not become operative and effectual unless passed over his veto, by an affirmative vote of two-thirds of all the members of each board of the court of common council, present or absent. The mayor may also approve or disapprove any part of any vote, order, ordinance, or resolution, and the part of the vote, order, ordinance, or resolution approved shall become operative and effectual, and the part disapproved shall be void, unless passed over his veto in the manner aforesaid.

Sec. 12. The mayor shall have power: 1. To assume the entire control and direction of the police and fire forces of the city, or either of them, for a period not exceeding five days, at his discretion in case of emergency, and to exercise all of the powers conferred upon the fire and police departments in relation thereto. 2. To exercise, whenever necessary in order to suppress tumults, riots, or unlawful assemblies, within the limits of said city, all the powers given by law to sheriffs in relation to riotous assemblages; and, at all times, when necessary, to require the aid of any sheriff, deputy-sheriff, constable, or policeman, or any or all of them together, to assist him in executing the laws within the limits of said city. 3. To make requisition for the several companies of the Connecticut national guard and divisions of naval reserve in said city, or any of them, whenever he shall have reason to believe that great opposition will be made to the exercise of his authority, and to exert all the force necessary to enable him to execute the laws within the limits of said city. 4. To appoint, whenever he may deem it best to do so, three competent, disinterested persons, no more than two of whom shall be of the same political party, to examine without notice the affairs of any department, officer, or employee of said city, and submit the results of said examination to him. 5. The mayor may at any time, whenever he may believe any person appointed to office by him or any of his predecessors to be incompetent, or unfaithful to the duties of his office, or that the requirements of the public service demand his removal, summon said officer before him at a place and time specified in said summons, to show cause why he should not be removed from said office. With said summons he shall leave with said officer a written state-

*A. Heaton Robertson* and *Leonard M. Daggett*, with whom was *Isaac Wolfe*, for the appellee (defendant).

ment of the charges against him, and if, after a full hearing, he shall find that such officer is incompetent or unfaithful, or that the requirements of the public service demand his removal, he may remove such person from his office. Any such official so removed may appeal from the order of the mayor removing him from said office to the Superior Court or any judge thereof, which appeal shall be made returnable not more than six nor less than three days from the date of the order of removal of said mayor, and shall be served upon the mayor or at his usual place of abode at least forty-eight hours before the time fixed for a hearing. And such court or judge, having given such further notice as may be deemed necessary to all parties, shall forthwith hear said case, and may approve or revoke the order of said mayor and may award costs at his discretion. But no such official so removed shall exercise any of the powers of his office during the pendency of his appeal to the superior court.

Sec. 46. There shall be in said city a department of police service which shall be under the management and control of a board of six commissioners to be appointed as hereinafter provided, and with duties as herein set forth.

Sec. 47. Said department shall preserve the peace, good order, and security of said city, and shall consist of a superintendent and such officers, policemen, supernumeraries, special constables, police matrons, and employees, as the board of police commissioners may from time to time prescribe. All promotions of officers and members of the police force shall be made by the board of police commissioners on grounds of meritorious police service and superior capacity, and shall be as follows: sergeants of police shall be selected from among patrolmen, and captains from among the sergeants. All appointments, including special constables, and promotions, except the superintendent, shall be made by said board in accordance with the rules of the civil service board, but no one except special constables shall be permanently appointed until he shall have performed active police service as supernumerary for at least six months. Said board of police commissioners shall have power to designate members of such supernumerary force, for such period of active service as it may think proper. The board of police commissioners may establish a detective bureau, which shall be under the charge and direction of a captain of the detective force, who shall be subject to the order of the superintendent of police.

Sec. 48. The members of the board of police commissioners in office when this Act takes effect shall continue in office during the terms for which they were appointed, unless sooner removed for cause in accordance with the provisions of this Act. During the month of June, 1900, and in each June thereafter, the mayor shall appoint two members of said board for a term of three years from the first day of July next

HAMERSLEY, J.   The mayor of New Haven removed the plaintiff from the office of police commissioner.   The plaintiff appealed from the order of removal to the Superior Court.   The court affirmed the action of the mayor, and this appeal is from that judgment.

The reasons of appeal allege that the court erred in overruling the claims of law made by the plaintiff upon the trial.   These claims were that the mayor had no jurisdiction of the subject-matter of removal, and that, if he had jurisdiction, the order of removal was illegal by reason of errors committed by the mayor in the course of the hearing before him.   All the errors assigned are based on the assumption that the action of the mayor in removing one of his subordinates, is judicial and strictly analogous to the amotion of a corporate officer by a municipal corporation, for the commission of some offense by which the right to the office is

---

succeeding.   No more than three members of said board shall at any one time belong to the same political party.

SEC. 49.   The mayor shall be *ex officio* chairman of said board, and may vote, in case of a tie, upon all questions, except upon the election or appointment of any officer or employee elected or appointed by said board.   In case of a tie vote in said board for any election or appointment remaining undecided for a period of thirty days, the mayor may then vote upon said election of officer or employee.   When a vacancy shall exist in the office of superintendent, the mayor shall appoint a new superintendent, who shall only be removable as provided for other appointees of the mayor.

SEC. 50.   The board of police commissioners shall fix the pay or compensation of all members of the department, except the superintendent, whose salary shall be at the rate of twenty-five hundred dollars per year, provided that the pay of the members of the veteran reserve shall be regulated in accordance with the amount of duty performed, and shall not be more than one-half nor less than one-fourth of the rate of compensation previously received by said members while in the regular grade.

SEC. 51.   In addition to the supernumerary and regular police force, there shall be an honorary grade, known as the veteran reserve, to which said board of police commissioners may, at its discretion, transfer any member of the regular force, who shall, through age, or physical disabilities incurred in the discharge of perilous duty, or in long and faithful service, become permanently disqualified for the more active duties of the regular grade.

forfeited; or to the deprivation of an officer of an ecclesiastical corporation for the commission of a similar offense. If this assumption is correct, it may be that some of the errors assigned are well taken. We think that it is not correct.

The charter of the city of New Haven as revised in 1899 (13 Special Laws, pp. 388–454) is a wide departure from those grants of franchises by which the municipal corporations of England were formerly established, and which were largely followed by our acts creating cities, first enacted in 1784. It is also a departure from the modern changes in city charters, by which a large portion of corporate and governmental power is assigned to independent boards. The present charter of New Haven seeks to secure good government through the concentration of responsibility and power in the mayor. At the biennial elections the freemen choose the mayor, the legislative body, and a few officers whose duties do not relate to the active conduct of municipal business, such as a clerk and comptroller.

The mayor has a power of veto upon all legislative acts, which can be over-ridden only by a two-thirds vote. With the exceptions named, and excepting also the officers of the legislative body, and of the City Court, every officer and every employee in the government of the city and the conduct of its business is directly or indirectly the appointee of the mayor. The duties of the mayor as set forth in § 11, and throughout the charter, cover the whole range of executive power, and in terms make him "responsible for the good order and efficient government of said city." He is, for practical purposes, invested with the whole executive power; including, of necessity, the appointment and removal of those subordinate officials for whose conduct he is responsible. He appoints directly the governing body for each municipal department, *viz.,* the boards of finance, of police commissioners, of fire commissioners, a majority of the board of park commissioners, the boards of health, of library directors, of education, of charities and correction, and the director of public works; also the chief executive officer or superintendent, and heads of bureaus in these departments,

and the other principal officers not connected with these departments.  He appoints indirectly, through these boards and superintendents, the other officers and employees of the city.

But the power of appointment and removal, thus given to the mayor directly, and indirectly through his subordinates, is affected by another main purpose of the charter.  It seeks to secure good government, not only through the power and responsibility centered in one chief magistrate, but also by treating fitness and merit as the controlling reason in appointment of municipal officers and agents, and by separating the administration of municipal affairs from the control and influence of party politics ; and to this end requires nearly all appointees, except those directly appointed by the mayor, to be taken from those approved as competent by the civil service board, and provides that appointments and removals shall not be made for political reasons.  For this reason certain restrictions are placed on removals made by the governing body of city departments, and by the heads of bureaus. And for the same reason, removals by the mayor are to be made in the manner prescribed in § 12, and this mode is repeated in § 213, after the various modes of making the mayor's appointments have been detailed.

We think it evident that this mode of removal is rather a mode of exercising the power of removal incident to executive appointment, than a *quasi*-judicial power to hear and determine official offenses, punishable by a forfeiture of office. The first step in removal is not to be taken until the mayor has reached a belief that the officer is incompetent, or unfaithful, or that his removal is demanded by public interest.  He cannot act on this belief without making a public record of the grounds that have convinced him, and giving the party affected a full hearing.  If this hearing is treated as the trial of an officer for the commission of an offense which forfeits his office, then the legislature has provided for a trial and conviction before a judge who must disqualify himself by forming an opinion, before he can act.  The opinion, finding, or conclusion which the mayor must reach, after a hearing, is in truth similar in character to that which he must reach

before making an appointment. Is he competent? Is he honest? Can he serve the city's interest? The mayor must find an affirmative answer to these questions before he can honestly make an appointment. Before he can legally make a removal he must, after notice and hearing, find an affirmative answer to one or more of these questions: Is he incompetent? Is he unfaithful? Does the public interest demand his removal? The notice to the officer to be removed must contain a fair statement of the charges or grounds which have influenced the mayor in forming his belief. The hearing given to the officer in reference to the truth of these grounds, as facts, as well as to the broader question of public interest, must be full. When the hearing is finished, the mayor must answer the questions in view of all he has heard, and may remove, or retain in office, in exercise of his official discretion. This view is confirmed by § 139, which specifies some eleven offenses as grounds for removal of any municipal officer, and provides the mode for the judicial trial of an officer charged with the commission of any such offense; and by way of distinguishing such removal from the power of removal belonging to an appointing officer, § 143 expressly excludes any possibility of construing the provisions of this punitive removal as limiting or changing the provisions for removal of his appointees by the appointing officer, as defined in other provisions of the charter.

The foregoing considerations determine the nature of the appeal to the Superior Court. The removal of an officer upon conviction of an offense which forfeits his right to hold the office is an act mainly judicial, and perhaps administrative only as connected with the exercise of the police power. The removal of an officer as incident to the executive power of appointment, is not judicial, and, even where such removal is restricted by the establishment of certain precedent formalities, it is not judicial in the same sense as a removal made wholly as a punishment for an offense.

It would be impracticable for the court upon appeal, to entertain all the considerations that must control or influence the mayor in exercising his discretion as to the removal.

Such discretion is hardly transferable from the mayor to a court. The appeal, however, can properly bring before the court the validity of the removal, in view of the proceedings required by law before the removal is made.

We think the appeal is given for this purpose, i. e., to provide a summary process by which the court may revoke the order of removal in case any essential formality has been omitted, or, perhaps, in case it finds that the mayor has acted so arbitrarily as to defeat the real purpose of the law in modifying an absolute discretion in removal. This view of the mayor's powers is fairly expressed by the language of the charter, and we could not restrict his power of removal to a mere adjudication of specific offenses charged, without limiting the intention of the legislature expressed in the whole structure and details of the charter as to the plan of the municipal government thereby established. This plan may be to some extent an experiment, but it is the duty of the court to aid rather than to hamper its trial.

The first, second, and sixth reasons of appeal claim that the mayor had no power or jurisdiction to remove the plaintiff, because: (1) The particular acts of the plaintiff which influenced the mayor in finding the removal to be demanded by the public interest, were done by the plaintiff in the exercise of his official discretion. (2) These particular acts were done during the term of office of the mayor's immediate predecessor. (3) The mayor's immediate predecessor knew of these acts and did not take any steps toward the removal of the plaintiff.

These claims are made under a misapprehension of the real nature of the mayor's act of removal. He removes because, after an opportunity given to the officer to explain his conduct and to show that he ought not to be removed, he has become satisfied that the officer is so incompetent, or so unfaithful, or that for other reasons appearing his removal is so clearly demanded by the interests of the public, that it is his duty to remove him from office. For the wisdom or reasonableness of his decision he is responsible to those who placed him in power. Official discretion may have been so

exercised by the person removed as to satisfy the mayor of his present incompetency, or unfaithfulness, or that his removal is a public necessity. Acts done before the commencement of the mayor's term of office may be considered in reaching the mayor's conclusion. Whether he could legally remove an officer without any ground, except conduct which his predecessor, after hearing, had decided did not furnish sufficient reason for removal, is a question not before us.

The third, fourth and fifth reasons of appeal claim that the order of removal is illegal, because, upon the hearing, the mayor denied a motion to make the charges more specific, and refused to permit the plaintiff to have the assistance of counsel. As we have said, this hearing is not a trial. There are not adverse parties and a judge. It is rather a necessary investigation by the executive precedent to the performance of an official duty.

The cases cited by the plaintiff as to the course of proceeding, where an officer is tried for the commission of an offense which forfeits his right to office, and, on conviction thereof, is removed by the trier, turn upon an adjudication of private right substantially differing from that which may be involved in this case.

The hearing before the mayor, however, while primarily in the interest of the public, to secure deliberate and honest action of the mayor in exercising his power of removal and such record of his proceedings as will fix his responsibility, does materially affect the interest of the person removed, and for this reason the mayor is bound to give him a full and fair hearing. It is possible that on such hearing the mayor's conduct may be so unjust, unfair, and unusual, as to prove that the removal was not made honestly in the public interest, but arbitrarily, for political or personal reasons, and a removal so made would not be legal.

The refusal of assistance of counsel in a hearing of any kind, affecting the interests of a party to the proceedings, is unusual, and may tend to prove arbitrary and unfair conduct on the part of the person conducting the hearing; but does not in itself invalidate the result of a hearing, unless in a

purely judicial proceeding, or in a trial before administrative officers closely akin to a trial in court. In this case, no claim is made that the mayor did not act honestly, and if it be true that he might more properly have conducted the hearing in a different manner, that mistake would not invalidate the removal. The fact that the Superior Court, after a trial, was satisfied that the removal was entirely justifiable, would seem to indicate that the mistake of the mayor, if any were made, did not injure the plaintiff.

The seventh reason of appeal, claiming that the trial court found certain specified facts without evidence, is not supported by the record; certainly so far as those facts are material to the judgment rendered.

The error assigned " in approving the order of the mayor upon the facts stated in the finding," is too indefinite and general. It may mean that the facts do not support the court's conclusion, because it erred in overruling the claims of law made upon the trial. If so, the claim has been fully considered. It may mean that there are not facts stated in the special finding sufficient to support the judgment, or that there are facts stated which are wholly inconsistent with the judgment rendered. If so, the exception is plainly unwarranted.

The record discloses no sufficient reason for a correction of the finding.

The trial court did err in ruling, at the opening of the trial, that the mayor and not the plaintiff had the affirmative of the issue. The error arose from a mistaken view of the question submitted to the court by the appeal. The plaintiff, however, did not except to the ruling, and was not injured by it.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.